O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JESUS MAGANA, ) | Case No. CV 06-07897-MLG |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the ) | |
| Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**I.   Factual and Procedural Background**

This is an action for judicial review of the Social Security Commissioner's final decision denying Plaintiff Jesus Magana's application for disability insurance benefits under 42 U.S.C. §§ 416(i), 423.

Plaintiff was born on November 24, 1951 in Mexico and was 54 years old at the time of the decision under review. (Administrative Record ("AR") at 32). He completed the sixth or seventh grade in Mexico before moving to the United States in 1966. (AR at 482). Plaintiff worked as a truck driver for Condor Freight From 1995 to December 2002, when he was hospitalized for a heart attack. (AR at 486). Plaintiff has not worked

since that time. He applied for disability insurance benefits on December 19, 2003. (AR at 20.)

Plaintiff's application for benefits was denied initially and on reconsideration. (AR at 38, 44). A de novo hearing was held before Administrative Law Judge Zane A. Lang on March 29, 2005. On May 19, 2005, ALJ Lang determined that Plaintiff had a residual functional capacity ("RFC") to perform light work and that Plaintiff therefore was not entitled to disability benefits. (AR at 367-74).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR at 378). On August 19, 2005, the Appeals Council vacated ALJ Lang's decision for failure to evaluate the opinion of Plaintiff's treating physician in determining Plaintiff's residual functional capacity ("RFC") and failure to assess several factors in determining the credibility of Plaintiff's subjective complaints of pain. (AR at 383). The Appeals Council remanded the case to ALJ Lang with instructions to provide Plaintiff a new hearing and issue a new decision. (AR at 383-84).

The second hearing was held on August 1, 2006. At that hearing, ALJ Lang heard testimony from Plaintiff and vocational expert Sandra Trost. On August 18, 2006, ALJ Lang again determined that Plaintiff had the RFC to perform a limited range of light work, finding that Plaintiff could "lift and carry up to 20 pounds occasionally and 10 pounds frequently, and can stand, walk, and sit for about 6 hours in an 8-hour workday; can occasionally push and pull with the upper extremities; cannot climb ladders, rope, or scaffolds; can occasionally climb ramps and stairs; is limited to occasional balancing, stooping, kneeling, crouching, and crawling; and can occasionally reach at or above the shoulder level bilaterally." (AR at 33). ALJ Lang also determined that there existed

jobs at the light exertional level that Plaintiff could perform. (AR at 34). ALJ Lang again concluded that Plaintiff was not entitled to disability benefits. (AR at 34).

After the Appeals Council denied review, Plaintiff filed this action on December 12, 2006. The parties have filed a joint stipulation ("JS") of disputed issues and the matter is now ready for decision.

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

//
//

**III. Discussion and Analysis**

    **A.    The ALJ's Finding that Magena Has the Residual Functional Capacity to Engage in Light Work is Supported by Substantial Evidence**

Magena urges the Court to overturn the ALJ's finding that he is capable of light work and to instead determine that he is limited to "semi-sedentary work," a category established by California regulations relating to disability assessments under state law.[1] Notwithstanding Plaintiff's erroneous suggestion that a California agency category such as "semi-sedentary work" may constitute a RFC category for purposes of the Social Security Act, Plaintiff can still prevail by showing that the ALJ's light work determination was not supported by substantial evidence. To this end, Plaintiff argues that the ALJ did not fairly credit Plaintiff's subjective testimony about his own limitations and failed to properly consider the assessments of Plaintiff's treating physicians. (JS at 4). These claims shall be discussed in turn.

    **1.    The ALJ's Credibility Determination was Supported by Substantial Evidence**

In assessing a claimant's credibility, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."

---

[1] Plaintiff cites to the "Ratings Guidelines of California" by way of a reference to an "Exhibit 'A.'" (JS at 12.) Though the exhibit does not indicate the provenance of this "Ratings Guideline[]," it is apparently the California Department of Industrial Relations Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines (April 1997). Federal courts apply Social Security Administration regulations, not state guidelines, when making RFC determinations. *See, e.g., Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Unsurprisingly, then, it appears that no federal court in the nation has ever determined that a Social Security Plaintiff has a "semi-sedentary" RFC.

*Reddick v. Chater*, 157 F.3d 715, 722 (1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). Social Security Regulation 96-7p identifies the types of evidence that may be used, in addition to objective medical evidence, to assess a claimant's credibility.[2] For example, an ALJ may discredit a claimant's testimony if she engages in daily activities that are inconsistent with her allegations. *Bunnel v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). "Another relevant factor may be 'unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ may also use "ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (internal quotations omitted).

ALJ Lang found portions of Plaintiff's testimony about his own limitations not to be credible. First, he found that Plaintiff overstated the degree of his impairments. For example, Plaintiff

---

[2] SSR 96-7p lists seven types of evidence:
1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at * 3.

asserted that he could not lift more than 10 pounds with his left arm, but the medical records indicate only a degenerative right shoulder impairment, not a left shoulder impairment. Plaintiff further asserted that he could not walk more than a block, a claim of exertional limitation unsupported by medical evidence. The ALJ noted that Plaintiff's physical and mental complaints have been generally conservative and that he has never been prescribed a powerful pain medication. (AR at 28-29). The ALJ further referenced inconsistencies regarding Plaintiff's English language capabilities to support the adverse credibility determination. (AR at 29). The ALJ finally noted Plaintiff's psychiatrist's clinically supported impression that Plaintiff may be exaggerating the severity of his maladies. (AR at 29). These findings are all legally valid and constitute substantial evidence to support the ALJ's credibility determination.[3]

### 2. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physicians

It is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources.[4]  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999);

---

[3] Plaintiff challenges the ALJ's finding that Plaintiff did not undertake aggressive pain alleviation by listing 15 medications prescribed to Plaintiff without indicating what each medication is used for. (JS at 6-7). After the Court's time-consuming inquiry into the uses of these medications, several of which are misspelled in the JS, it became clear that not one is a prescription painkiller. Plaintiff's challenge to the decision on this basis is accordingly meritless.

[4] The ultimate question of whether Plaintiff is disabled is the province of the ALJ, not the treating physician. 20 C.F.R. § 404.1527(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *Montijo v. Secretary of Health and Human Services*, 749 F.2d 599, 601 (9th Cir. 1984) ("The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate

*Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1989). A treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [will be given] controlling weight." 20 C.F.R. § 404.1527(d)(2).[5] Even if a treating physician's opinion does not meet the test for controlling weight, it will "[i]n many cases ... be entitled to the greatest weight and should be adopted." SSR 96-2p, at *4. Accordingly, the ALJ must provide specific, legitimate reasons based on substantial evidence to reject even the contradicted opinion of a treating physician. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff assigns error to ALJ Lang's partial rejection of opinions provided by Plaintiff's physicians concerning Plaintiff's limitations. Plaintiff focuses on a workers' compensation report prepared on March 16, 2005 by Plaintiff's treating physician, Dr. Ronald D. Zlotolow, an internist. Dr. Zlotolow reported that Plaintiff should not be exposed to stress; can not perform heavy work, including heavy lifting; and suffers a moderate degree of permanent emotional impairment. (AR at 330). In his decision, the ALJ stated that his determination that Plaintiff has the RFC for light work is "not inconsistent" with the limitations assessed

---

issue of disability.").

[5] "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Social Security] Administration considers specified factors in determining the weight it will be given." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). These factors are: (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) supportability of the diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527(d)(2)(I).

by Dr. Zlotolow. (AR at 26).

Light work is defined in the Social Security Administration regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable fo performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). Dr. Zlotolow opined only that Plaintiff was precluded from engaging in heavy work. Plaintiff provides no reason why light work as defined by the regulations and the limitations identified by Dr. Zlotolow are not consistent.

Dr. Zlotolow also suggested that Plaintiff be restricted to semi-sedentary work due to his coronary artery disease. (AR at 330). This suggestion was based on Plaintiff's statement that he can only walk about a block before suffering shortness of breath and chest pains. (AR at 330). The ALJ rejected Dr. Zlotow's semi-sedentary restriction on the ground that it was not supported by objective medical evidence. (AR at 26). Plaintiff's treatment records indicate that he repeatedly reported – before and after March 2005 – that he had no shortness of breath, chest pain, fatigue, or weakness. (AR at 431, 444, 447, 454, 456, 458,

1  460, 462). Only in February 2004 did Plaintiff otherwise complain of
2  shortness of breath, and that was when he was suffering from "acute
3  pharyngitis," i.e., a sore throat. (AR at 450). The lack of evidence in
4  Plaintiff's treatment records that would support a significant
5  limitation on Plaintiff's activities undermines Dr. Zlotolow's opinion
6  that Plaintiff be limited to semi-sedentary work. *See Johnson v.*
7  *Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1996) (ALJ properly rejected
8  opinion of treating physician based on inconsistencies in
9  contemporaneous clinical records). Accordingly, substantial evidence
10 supported the ALJ's evaluation of Dr. Zlotolow's opinion as to
11 Plaintiff's RFC.

**B.   The Vocational Expert's Testimony Supported the ALJ's Finding that Jobs Existed For Plaintiff Despite His Limitations**

Plaintiff contends that the testimony of vocational expert Sandra Trost does not establish the availability of jobs that Plaintiff can perform despite his limitations. ALJ Lang presented Trost the following hypothetical, which included those limitations that ALJ Lang found to apply to Plaintiff:

> If you have a hypothetical individual the claimant's age, education and work experience, [can lift 20 pounds occasionally, 10 pounds frequently, sit, stand and walk six hours out of an eight hour day, no climbing ladders, ropes and scaffolds, kneeling, crouching, crawling, occasional pushing and pulling with the upper extremeties ... occasional at or above shoulder level reaching[, t]here's no limitations on the hands], can speak, understand, read and write English, and no limits on understanding, remembering and carrying out simple instructions, no detailed or complex instructions, no limits

on simple judgments and work related decisions, no detailed or complex judgements and decisions, and occasional contact with supervisors, co-workers and the public, could this hypothetical individual perform any entry level work?

(AR at 516-17, 520). Trost testified that this hypothetical individual could be a laundry sorter, with 2,055 local and 51,765 national jobs, or a cleaner at the light level. (AR at 520-21). ALJ Lang consequently determined that there were a significant number of jobs which Plaintiff could perform in the local and national economies.

Plaintiff now argues that his limitations are incompatible with the DOT guidelines for laundry sorter and cleaner.[6] The DOT contemplates that a laundry sorter have the "strength" to "exert[] up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly ... to move objects." DOT, 361.687-014 & Appendix C. The ALJ specifically determined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. The ALJ also determined that Plaintiff could only "occasionally push and pull with the upper extremities." (AR at 33). Plaintiff asks the Court to find an incompatibility between the DOT's "negligible amount of force [applied] constantly ... to move objects" and the hypothetical limitation to "occasionally push and pull with the upper extremeties." SSR 00-4p at *2 (findings by vocational expert should generally be consistent with the DOT). The Court is unwilling to speculate that "pushing and pulling" equates with "constantly moving objects," and Plaintiff furnishes no

---

[6] Having already determined that ALJ Lang properly determined Plaintiff to have the RFC for light work, the Court examines his arguments here in terms of that RFC and not his claimed bundle of limitations which include mental and emotional limitations not credited by ALJ Lang.

10

authority to support such an equation. As a result, the DOT guidelines and the hypothetical exertional limitations (which are also Plaintiff's assigned RFC limitations) are not incompatible.

Plaintiff also argues that the exertional demands of a cleaner outstrip the hypothetical exertional limitations presented by ALJ Lang to vocational expert Trost. Specifically, Plaintiff contends that the frequent handling of objects required of cleaners and his limitations to be incompatible. This argument is without merit because the ALJ specifically appropriately found and instructed the vocational expert that the claimant had no limitations in using his hands, only in reaching above the shoulders. (AR at 517).

Plaintiff further argues that he lacks the language abilities set out in the DOT guidelines for a laundry sorter. According to the DOT, a laundry sorter has a passive vocabulary of 5,000 to 6,000 words, reads at 190 to 215 words per minute, and can "[r]ead adventure stories and comic books, looking up unfamiliar words in dictionary [sic] for meaning, spelling and pronunciation" and can "[r]ead instructions for assembling model cars and airplanes." DOT, 361.687-014 & Appendix C. Nothing in the record reflects that Plaintiff is either able or unable to read at this level. Plaintiff testified that he could speak English and that he passed an English examination to become a citizen. (AR at 27). Plaintiff's psychiatrist and several Social Security Administration employees noted his excellent English skills. (AR at 29). Plaintiff did testify that he does not understand all of what he reads in documents and can write "20%" in English. (AR at 27). It has been held to be error for the requisite DOT language skills to be unsupported in the record. *See Titus v. Callahan*, 133 F.3d 561, 562 (8th Cir. 1997). However, even assuming that the record does not support a finding that Plaintiff can

read at the level prescribed by the DOT for a laundry sorter, ALJ Lang's determination that a significant number of cleaner jobs exist, which do not have that reading requirement, renders any error harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Finally, Plaintiff assigns error to the ALJ's manner of presenting hypothetical "concentration, persistence, or pace" limitations to vocational expert Trost. The dispositive hypothetical recited above did not contain limitations as to "concentration, persistence, or pace." However, a distinct hypothetical did include these as well as other limitations: "[B]ecause of back pain, pain in the legs, in the shoulders, and the anxiety, well, let's say, and *difficulty concentrating, maintaining persistence and pace*, could not work five days a week, eight hours a day, or at the level of substantial gainful activity, could this hypothetical individual perform any work?" Vocational expert Trost answered "no." (AR at 521) (emphasis added). ALJ Lang's decision does in fact mention a report stating that Plaintiff has "moderate" difficulty with "concentration, persistence, and pace." (AR at 31). However, this statement is not one of the ALJ's specific findings, and accordingly it was not necessary that limitations on concentration, persistence, and pace be included in the dispositive hypothetical. *Baalist v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (hypothetical posed to vocational expert proper where it contained "all of the limitations that the ALJ found credible and supported by substantial evidence in the record").

For the foregoing reasons, ALJ Lang's determination at step five of the sequential five step process was substantially supported.

//

//

**IV.  Conclusion**

   For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case be dismissed with prejudice.

DATED: January 10, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge